## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the Court-Appointed Receiver of Thomas J. Petters and Thomas Petters, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lorence Allen Harmer, <br><br> Defendant. | Civ. No. 13-716 (JNE/JJK) <br><br> **REPORT AND RECOMMENDATION** |

K. Jon Breyer, Esq., Lindquist & Vennum, LLP, counsel for Plaintiff.

Marcus R. Mumford, Esq., Mumford PC, counsel for Defendant

## INTRODUCTION

Plaintiff Douglas A. Kelley, in his capacity as the Court-Appointed Receiver of Thomas J. Petters and Thomas Petters, Inc. ("Receiver"), filed this action against Defendant Lorence Allen Harmer ("Harmer"), seeking to recover approximately $470,000 in fraudulent transfers Harmer received from Thomas J. Petters and Thomas Petters, Inc. This matter is before this Court on the Receiver's Motion for Entry of Judgment, brought pursuant to Rules 55(b)(2) and 37(b)(2)(A)(vi). This Court held a hearing on October 5, 2015, on the Receiver's motion. Harmer did not oppose the motion or appear at the hearing. For the reasons stated below, this Court recommends that the Receiver's motion be

granted and that judgment be entered against Harmer in the amount of $475,338.00, together with prejudgment interest calculated from March 28, 2013, the date the Complaint was filed.

## BACKGROUND

This case arises from a massive fraud and Ponzi scheme designed and orchestrated principally by Thomas J. Petters ("Petters") (Doc. No. 1, Compl. ¶¶ 19–35). Petters was convicted of operating the Ponzi scheme in 2009. Other co-conspirators in the fraudulent enterprise admitted their involvement, pled guilty to various crimes related to their roles in the Ponzi scheme, and have been sentenced. (*Id.* at ¶ 23.) The Petters Ponzi scheme lasted more than a decade before it was discovered by federal authorities in 2008. (*Id.* at ¶ 20.) The investment scheme inflicted a significant financial toll on hundreds of victims who have been defrauded out of more that $3.8 billion. (*Id.* at ¶ 1.) Harmer was allegedly the recipient of millions of dollars that were stolen by Petters from innocent third parties. (*Id.* at ¶ 5.)

As part of the Ponzi scheme, on multiple occasions Petters caused money from Petters Company, Inc. ("PCI") – the depository for proceeds of the Ponzi scheme – to be transferred to Petters controlled business so those businesses could make payroll and pay extravagant bonuses, commissions, or other incentives to employees, directors, officers and consultants. (*Id.* at ¶ 36.) PCI obtained billions of dollars of funding from investors, purportedly to acquire merchandise for sale to wholesalers and retailers nationwide. In almost all

instances, however, the purchase and sale business did not exist. (*Id.* at ¶¶ 25–29.)

Petters' businesses were insolvent, or had unreasonably small operating capital, and required the proceeds of the Ponzi scheme to operate. (*Id.* at ¶ 42.) In addition to keeping the Ponzi businesses afloat, Petters gave lavishly from this pool of stolen money to universities and other charitable causes, and paid exorbitant sums of money to surround himself with executives, partners, and friends who helped create the essential air of success and wealth required to sustain the fraud, as well as the expertise to maintain it. (*Id.* at ¶ 2.) Harmer was one of these people. Petters appointed Harmer as President of Petters International, a wholly owned subsidiary of Petters Group Worldwide, LLC ("PGW"), and Chief Executive Officer, and later Chief Procurement Officer ("CPO"), of Petters Consumer Brands, LLC, which would later acquire Polaroid ("PCB" or "Polaroid"). (*Id.* at ¶ 3.)

Harmer allegedly leveraged his position with Petters to receive massive amounts of money and other gifts from Petters. (*Id.* at ¶¶4-5.) During the course of the Ponzi scheme, Harmer received more than $10 million dollars in fraudulent transfers. (*Id.* at ¶¶ 38-40.) These funds were paid to Harmer by Petters personally and through the accounts of PCI, PCB, and Thomas Petters, Inc. ("TPI"), all companies wholly owned by Petters. (*Id.*) Three separate lawsuits have been initiated to recoup these various transfers to Harmer.

The first of these lawsuits seeks $1,284,811.39 paid to Harmer through the

accounts of PCI.  These transfers are being sought through an adversary proceeding initiated by Douglas Kelley as Trustee of PGW and PCI in the United States Bankruptcy Court for the District of Minnesota. *See Douglas A. Kelley, et al. v. Lorence Harmer,* Adv. No. 10-04372.

The second lawsuit seeks more than $9 million paid to Harmer through the accounts of Polaroid and in collection of money Harmer stole from Petters during the course of the Ponzi scheme. These transfers are being pursued by John R. Stoebner, as the Polaroid Trustee, in the United States Bankruptcy Court for the District of Minnesota. *See John R. Stoebner, et al. v. Lorence Harmer,* Adv. No. 10-04603.

In the lawsuit before this Court, the Receiver seeks to recover $470,000.00 paid to Harmer by Petters, personally, and through the accounts of TPI.  The Receiver's Complaint alleges numerous claims under Minnesota's Uniform Fraudulent Transfers Act ("MUFTA").

## RELEVANT PROCEDURAL BACKGROUND

The Complaint in this matter was filed two years ago on March 28, 2013 (Doc. No. 1, Compl.).  Harmer initially moved to dismiss the Complaint, arguing that the Complaint failed to state a claim (Doc. No. 7).  On December 19, 2013, this Court denied Harmer's motion (Doc. No. 26).  On January 2, 2014, Harmer again moved to dismiss the Complaint, this time arguing the Court lacked subject matter jurisdiction over the dispute (Doc. No. 27).  Immediately after Harmer's motion had been filed by his out-of-state counsel, Harmer's local counsel noticed

4

his withdrawal from the case (Doc. No. 31). On February 12, 2014, the parties entered into a stipulation that withdrew Harmer's motion to dismiss and afforded him time to obtain new local counsel (Doc. No. 33). It has been more than a year since that stipulation was entered and Harmer has not retained new local counsel, re-filed the motion, or answered the Receiver's Complaint.

In the Spring of 2014, as part of the ongoing proceedings in the Bankruptcy Court, the parties agreed to mediate with The Honorable Thad J. Collins, Chief Bankruptcy Judge for the Northern District of Iowa. The mediation sought to resolve all claims brought by the Receiver and the two Trustees. The mediation was held on April 18, 2014, but the case did not settle. Settlement discussions reportedly continued among the parties through the summer months. However, without a resolution in sight, the Court ordered a Pre-Trial Conference on July 22, 2014, to establish a scheduling order (Doc. No. 35). Harmer and his counsel failed to appear at the hearing. Pursuant to the Scheduling Order, all non-expert fact discovery was to be completed by February 1, 2015 (Doc. No. 37).

On December 30, 2014, the Receiver served Harmer with Interrogatories, Requests for Production of Documents, and a deposition notice, scheduling Harmer's deposition for January 30, 2015. (Doc. No. 43, Aff. of K. Jon Breyer ("Breyer Aff."), Ex. A.) Harmer did not respond to the written discovery and, days before his scheduled deposition, indicated that he would not appear for his

deposition.  Instead, Harmer wanted to once again reignite settlement discussions.  (Breyer Aff. ¶ 3.)

Taking Harmer at his word, the Receiver entered into a stipulation with Harmer to amend the Scheduling Order and the discovery deadline was extended to April 1, 2015 (Doc. No. 38).  Despite promises of a settlement offer, none was forth coming.  By email on February 19, 2015, the Receiver's counsel inquired as to the promised settlement proposal, as it had been the basis for requesting an extension of the discovery deadline.  (Breyer Aff., Ex. B.)  The email also reminded Harmer's counsel of the pending discovery requests, and requested that he provide sufficient responses by March 9.  (Breyer Aff. ¶ 5.)  Inquiry was also made as to whether Harmer had secured new local counsel.  Harmer's counsel never responded to the email.  (*Id.*)

On March 2, counsel for the Receiver sent a letter to Harmer's counsel requesting that the previously served discovery be answered, and that responsive documents be produced by March 13.  (Breyer Aff. ¶ 6, Ex. C.)  Harmer was also served with an amended deposition notice, scheduling his deposition for March 23, 2015.  (*Id.*)  Again, Harmer failed to comply with discovery.  The Receiver subsequently filed a motion to compel and requested that Harmer be sanctioned (Doc. No. 40).  Harmer did not respond to the motion.  By Order dated April 16, 2015, this Court granted Plaintiff's motion and ordered Harmer to provide responses to the Receiver's written discovery by April 30, 2015 (Doc. No. 47).  The Court further ordered that on or before April 30, 2015,

Harmer shall pay the Receiver $5,338.00 in monetary sanctions or submit a memorandum presenting argument as to why he should not be subject to the sanction. Harmer did not provide any discovery responses as Ordered. Nor did he submit a memorandum explaining why he should not be sanctioned and, further, he has not paid the Receiver the monetary sanction as ordered.

Pursuant to Rules 55(b)(2) and 37(b)(2)(A)(vi), the Receiver now moves the Court for entry of judgment in favor of the Receiver in the amount of $475,338.00, plus prejudgment interest.

## DISCUSSION

**A.    Entry of Judgment is Appropriate Under Rule 55.**

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of default judgment "when a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit." Since the filing and service of the Complaint on March 28, 2013, Harmer has failed to file and serve an answer.

Harmer's motion to dismiss was denied on December 19, 2013. Pursuant to Fed. R. Civ. P. Rule 12(a)(4)(A), Harmer was required to file and serve his answer to the Complaint within 14 days of the Court's decision. More than 20 months have passed since the Court denied his motion and Harmer has not filed an answer or otherwise responded to the Complaint. Pursuant to Fed. R. Civ. P. 55(b)(2), entry of judgment is warranted.

7

## B.     Entry of Judgment is Appropriate Under Rule 37.

As a separate basis for entry of judgment, Rule 37 "grants a district court the authority to enter a default judgment against a party who abuses the discovery process." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993). "When a litigant's conduct abuses the judicial process, . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court." *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992). Striking a party's pleadings under Rule 37 is well within the range of appropriate sanctions when a party, such as Harmer, demonstrates a blatant disregard of the Court's orders and the discovery rules. *See Comiskey*, 989 F.2d at 1010 (concluding that the district court did not abuse its discretion in granting a default judgment against a defendant that failed to comply with discovery obligations and multiple court orders); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999) (concluding that district court did not abuse its discretion in striking a defendant's answer where the defendant repeatedly failed to follow discovery rules and court orders). Here, the sanction of entry of judgment against Harmer is necessary and appropriate given his lack of compliance with his discovery obligations and his disregard of this Court's Orders. The Court's April 16, 2015 Order expressly warned Harmer that entry of judgment could be entered against him if he did not comply with the Court's Order (Doc. No. 47). Consequently, Harmer cannot claim that he was unfairly surprised by this sanction or that this Court did not give him ample opportunity to take remedial steps to avoid this sanction.

**C.     Prejudgment Interest**.

Prejudgment interest is regularly awarded unless there are exceptional circumstances to justify the refusal. *Cargill, Inc. v. Taylor Towing Serv., Inc.*, 642 F.2d 239, 242 (8th Cir. 1981). For claims arising under a federal court's diversity jurisdiction, "[p]rejudgment interest is a substantive matter of state law[.]" *See, e.g.*, *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595–97 (8th Cir. 2007) (applying state law's prejudgment interest rate to state law claim arising under the court's diversity jurisdiction); *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 (8th Cir. 2003) (same). The Receiver's claims against Harmer arise exclusively under state law, specifically Minnesota's Uniform Fraudulent Transfers Act ("MUFTA"). Consequently, Minnesota state law applies.

Pursuant to Minnesota's applicable prejudgment interest statute, "interest on pecuniary damages shall be computed as provided in paragraph (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first . . ." Minn. Stat. §549.09, subd. 1(b).  Here, the Receiver requests, and this Court agrees, that prejudgment interest provided for under Minn. Stat. §549.09 shall accrue as of March 28, 2013, the date the Complaint was filed.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Entry of Judgment (Doc. No. 48), be **GRANTED.**

2. Judgment be entered against Defendant and in favor of Plaintiff in the amount of $475,338.00.

3. Prejudgment interest shall accrue on the Judgment as of March 28, 2013.

Date: October 13, 2015

   s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.